JENNIE R. KIMBALL, APPELLEE, V. F. L. HARDY ET AL., APPELLANTS.

FILED NOVEMBER 17, 1932. No. 28270.

H. N. Mattley and Lester L. Dunn, for appellants.

Chambers & Holland, contra.

Heard before ROSE, DEAN, GOOD, EBERLY, DAY, and PAINE, JJ.

DEAN, J.

This action was begun in the district court for Lancaster county by Jennie R. Kimball, the plaintiff, against F. L. Hardy and Benjamin H. Fogelson, the defendants, to recover $1,800 for certain rentals alleged to be due and owing the plaintiff pursuant to the terms of a written lease, and $80 under a plumber's lien. Fogelson filed a general denial. Hardy admitted the execution of the lease and that rent was due thereunder, but he alleged in a cross-petition that he had suffered damages in the following sums, namely: $425 for failure of the plaintiff to yield possession of the premises at the agreed time; $800 a month for four months' loss of business; $73.45 for the cost of repairing sidewalks adjacent to the rented property; $200 for damages resulting from failure to repair the roof; $350 for the cost of repairing a heating plant; and $500 for damages alleged to have been sustained in the installation of a new building front.

Upon submission, the jury returned a verdict in favor of the plaintiff and against the defendants for $1,757, upon which the court rendered a judgment. The defendants have appealed.

On or about June 17, 1926, F. B. Kimball and Jennie R. Kimball, the plaintiff, executed and delivered a lease of the property in suit to defendant Hardy, the lease to commence as of October 15, 1926, and to continue in effect until October 15, 1931, or for a 5-year period. A covenant of the lease provides that a total rental of $18,000 shall be paid by Hardy during this period, $900 of which was due when the lease was signed, $300 was due three months after date of possession, and $300 of which was to be paid every month thereafter. Under the terms of the lease Hardy was to do any necessary remodeling and keep the heating system in repair, and to install a new metal store front, all such improvements at the termination of the lease to become the property of the plaintiff. It may here be noted that, since the execution of the lease, the plaintiff, Jennie R. Kimball, has acquired the sole interest in and to the property.

It appears that, up to November 1, 1929, Hardy conducted a used car business in the leased building. At that time, as an inducement and in consideration of the sale by Fogelson to him of a half interest in a bowling alley, Hardy agreed to sell and transfer all cars and equipment located in the leased building to defendant Fogelson who, in turn, agreed to find tenants and collect the rentals on the leased building. In pursuance thereof, a written instrument was executed between the defendants wherein Fogelson agreed to pay the rental of the building, at the rate of $300 a month, from November 15, 1929, to November 15, 1931, and wherein it is provided that Fogelson shall "observe all the covenants in the lease of said premises to the said second party (Hardy) given by the owners thereof, and to save the second party harmless with reference thereto." The evidence discloses that any amount over $300 collected by Fogelson was to be his profit and

any amount under that sum was to be his loss, and that the average monthly rental amounted to $350 as collected by him.

The defendants deny that Hardy at any time assigned or intended under the agreement to assign the lease of the property in suit to Fogelson. The main question for determination then is whether the evidence is sufficient to constitute Fogelson an assignee of the lease.

The evidence of a tenant of the leased building discloses that the matter of rent was discussed by him with both the defendants, and that he at first paid the rentals to Hardy, but that, from April 16, 1930, until February, 1931, all rental checks were made payable to Fogelson pursuant to a conversation between himself and the defendants wherein it was remarked that Fogelson was taking over the lease. To substantially the same effect is the evidence of other witnesses who testified that they discussed the rental terms of the leased building with both of the defendants and that checks were at first sent to Hardy but later to Fogelson. Certain of these checks are in the record and tend to prove that, during the period for which the plaintiff seeks to recover rent, Fogelson received the rental checks from the tenants.

It has been stated: "A subletting for the entire term is an assignment of the lease, and privity of estate is created thereby between the landlord and the sublessee, and the sublessee, as assignee, is liable to the landlord for the rent specified in the lease." 36 C. J. 379. Elsewhere it is said: "Where a lessee assigns his whole estate in all the demised premises, the assignee is liable to the lessor for the whole of the rent reserved in the lease." 36 C. J. 373. See, also, *Hogg v. Reynolds*, 61 Neb. 758. "The general rule recognized in practically all jurisdictions is, that if a lessee conveys the leased premises for a period coextensive with his term, leaving no reversionary interest in himself, the conveyance is an assignment and not a sublease." 7 Ann. Cas. 537. And, in an early case, it was held: "Where leased premises were actually transferred by the

lessee, during the last month of the lease, for which rent had not been paid, the lessee vacating the premises and his successor taking possession, the lessor could, at his option, sue and recover from the lessee for the month's rent, or from his successor, treated as assignee, for the period of his occupancy under the agreement of transfer, though both the lessee and his successor denied that there was any assignment." *Grauer v. Rudinsky,* 111 N. Y. Supp. 530.

In the present case the evidence conclusively shows that Fogelson had possession and control of the property in suit from November 1, 1929, until February, 1931. And where the lessee vacated the leased premises and transferred his interest therein to a third party who procured tenants and collected the rentals and agreed to "observe all the covenants in the lease of said premises to the said second party (the lessee) given by the owners thereof, and to save the second party harmless with reference thereto," we conclude that such agreement constituted the third party an assignee of the lease and that he is liable for any unpaid rentals due the plaintiff lessor. Possession of the leased premises was surrendered by defendant Hardy to the plaintiff in a letter dated February 24, 1931. It is undisputed that the plaintiff had received no rent from September, 1930, to February 24, 1931, or for more than five months. The unpaid rent, and certain rentals due from a hamburger stand erected on the premises, together with interest thereon, all total approximately the sum found by the jury to be due the plaintiff under the terms of the lease, and we think the evidence is sufficient to support the verdict.

We have examined the allegations contained in the cross-petition of defendant Hardy and do not find merit therein. In respect of the alleged failure of the plaintiff to yield possession of the premises at the agreed time, the evidence discloses that Hardy was informed several months before he desired to move into the leased building that the parties then occupying it were uncertain when

they would move out and that it was therefore impossible for the plaintiff to name a positive possession date. And while the lease in suit was to commence as of October 1, 1926, it appears that the defendant Hardy did not begin paying any rental until February 15 of the following year because of the expense incurred by him in moving into a temporary location. Nor does it affirmatively appear that the delay in constructing a new building front was occasioned through any fault of the plaintiff. And in respect of the amount alleged to be due the defendant Hardy by reason of sidewalk repairs, the evidence tends to prove that the plaintiff constructed a driveway and sidewalk adjacent to the leased premises, as provided in the lease, but that Hardy caused additional work to be done at his own expense without informing the plaintiff. It appears too that, under the plaintiff's orders and at her expense, the roof of the leased building was several times repaired, and that Hardy did not thereafter complain in respect of leaks therein, nor did he at any time report to her any specific damage to cars in his business by reason thereof. The jury were correctly instructed in respect of the facts herein and the law applicable thereto. The judgment is

AFFIRMED.